## THE SAPPHO.[1]

### BROOKLYN WATER FRONT WAREHOUSE & DRY-DOCK CO. *v.* THE SAPPHO.

### KNUDSEN *v.* BROOKLYN WATER FRONT WAREHOUSE & DRY-DOCK CO.

*(District Court, E. D. New York. December 23, 1890.)*

NEGLIGENCE—DRY-DOCKS—IMPROPER DOCKING.
  A dry-dock company applied an hydraulic jack under the keel of a vessel in its dry-dock, whereby the keel was split and the vessel injured. It appearing that the keel was sound and strong, and that the cause of the accident was the failure of the dry-dock company to take the ordinary precaution of placing a plank between the keel and the head of the jack, *held*, that the dry-dock company was liable for the damage.

In Admiralty. Suit to recover for services in dry-docking vessel. Cross-suit for damages received by vessel while in dry-dock.

*Peter S. Carter*, for the Brooklyn Water Front Warehouse & Dry-Dock Company.

*North, Ward & Wagstaff*, for the Sappho.

BENEDICT, J. These are cross-libels. The action against the bark is to recover the sum of $415.50 for hauling the bark out on the libelant's dock, shifting the blocks, etc. The cross-libel is filed by the owner of the bark to recover for injuries alleged to have been done to the vessel while on the dock by the negligence and want of skill on the part of the dry-dock company. The dry-dock was made in sections of about 25 feet in length into which the water was allowed to flow to depress them, and when depressed the vessel was floated over them and raised by them by pumping the water out of the sections. Upon these sections blocks were placed at intervals upon which the keel of the vessel rested. When a vessel is to be coppered—as this bark was—while on the dock, the portion of the bottom where the vessel rests upon a block is covered with copper either by placing a sheet of copper on top of the block before the vessel is raised, or by shifting the block under the vessel after she is raised. The block is shifted by placing an hydraulic jack under the keel of the vessel and resting on the edge of one of the sections of the dock, so that by

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

pumping the jack the edge of that section is forced down into the water, the whole section being depressed enough to remove the pressure on the block, and then the block can be shifted. In this case when it came time to shift the block at the bow of the bark the hydraulic jack was placed under the keel a few inches from its end. The keel was pitch pine 14 or 15 inches in width. The head of the cap of the hydraulic jack was about 6 inches in diameter. When the power was applied by the jack to depress the section the keel split, the bolts through the dove-tail plates pulled out, and the vessel was injured to an extent that made it necessary to remove 16 feet of the keel and replace it with new, involving a detention of some three days longer upon the dock, and other damages.

On the part of the bark the contention is that the keel split because the dock owner attempted to apply the power of the hydraulic pump directly to the keel at a point close to the end of the timber, and without placing a plank between the jack and the keel to distribute the pressure. On the part of the dry-dock company it is contended that the damage resulted from a defect in the keel, a bad heart shake in the timber, which made the keel unsound. The weight of the evidence is that the keel was of pitch pine; that pitch pine is a wood commonly used for this purpose, and that while there was a heart shake, as is usually the case in this kind of timber, the keel was sound and strong, able to endure the pressure required to shift the block if distributed by means of a plank between the jack and the keel.

Next, it is contended on the part of the dry-dock that it was no negligence on the part of the dock to omit to use a plank to distribute the pressure. But the evidence shows that it is an ordinary precaution adopted under similar circumstances to place between the cap of the jack and the keel a bit of plank by which the pressure is distributed. In this case such a precaution was the more necessary because in ships constructed like the libelant's the stem runs down flush with the bottom of the keel, and the end of the keel abuts up against the aft side of the stem, where it was held in position by dead wood inside; dovetailed plates of heavy metal being bolted on the outside, by which the keel is fastened to the stem. Common prudence required the use of a plank in such a case.

Next, it is contended in behalf of the dock that the plank was omitted in this case because the block was not high enough to permit a plank to be inserted between the jack and the keel. But the proof is that the blocks were 20 inches high and the jack only 18. This would have enabled a plank to have been used, and furthermore, if the blocks were too low it was the fault of the dock owner, who knew that the block had to be shifted after the vessel was raised, and whose duty it was to provide proper blocks.

The libelant in the second case must have a decree for the amount of the damages sustained by the splitting of the keel, and a reference to ascertain the amount. The libelant in the first case, on payment of the damages, will be entitled to a decree for the amount of his bill.